UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

URBAN OUTFITTERS, INC.,

                     Plaintiff,

    v.

DERMODY OPERATING COMPANY, LLC, *et al.*,

                     Defendants.

Case No. 3:21-cv-00109-MMD-CLB

AMENDED ORDER

## I.   SUMMARY

This is a breach of contract action involving the construction of a fulfillment and distribution center. Plaintiff Urban Outfitters, Inc., brings claims against Defendants Dermody Operating Company, LLC, the developer of the project, and United Construction Co., the general contractor. (ECF No. 1.) Several motions are before the Court, including: Dermody and United's motions to dismiss (ECF Nos. 10 ("United's Motion"), 12 ("Dermody's Motion")), Plaintiff's motion for leave to amend the complaint (ECF No. 34), Plaintiff's motion to file supplemental briefing in support of its motion for leave to amend (ECF No. 49 ("Plaintiff's First Motion")), and Plaintiff's motion to file supplemental briefing in opposition to Defendants' motions to dismiss (ECF No. 58 ("Plaintiff's Second Motion")).[1] Plaintiff's motions for leave to file supplemental briefing include notice of two newly decided Nevada Supreme Court cases, which they argue impact the outcome of the other pending motions. *See Somersett Owners Ass'n v. Somersett Dev. Co., Ltd.*, 492 P.3d 534 (Nev. 2021); *Dekker/Perich/Sabatini Ltd. v. Eighth Judicial Dist. Ct. in and for Cnty. of Clark*, 495 P.3d 519 (Nev. 2021).

---

[1]Defendants responded to both Plaintiff's motions (ECF Nos. 50, 52, 59, 60), and Plaintiff replied (ECF Nos. 55, 56, 61).

1   As explained further below, the Court first finds that *Somersett* does not affect the

2   outcome of Plaintiff's motion for leave to amend and will therefore deny the First Motion.

3   However, the Court further finds that *Dekker* is new authority which does affect the

4   outcome of Defendants' Motions and Plaintiff's motion for leave to amend, and will

5   therefore grant Plaintiff's Second Motion. Because the parties included their arguments

6   about *Dekker*'s applicability to this case, the Court finds further briefing is unnecessary.

7   Having considered the new authority cited in Plaintiff's Second Motion, the Court will deny

8   in part and grant in part Defendants' motions to dismiss, and will grant Plaintiff leave to

9   file an amended complaint.[2]

10  **II.    BACKGROUND**

11  Plaintiff contracted with Defendants on May 11, 2011, for the construction of a

12  warehouse distribution and fulfilment center (the "Center") in Reno, Nevada. (ECF No. 1

13  at 2-3.) Plaintiff agreed to pay Defendants $25,540,253.00 for the Center, which would

14  encompass approximately 462,720 square feet, as well as associated driveways, parking

15  areas, on-site utilities, and landscaped areas. (*Id.* at 3.) The construction was

16  substantially completed on January 31, 2012, and Plaintiff took occupancy on February

17  2, 2012.[3] (ECF Nos. 13-2, 13-3.)

18  Plaintiff alleges that sometime around September 2019, it became aware that the

19  Center had sustained significant damage, initially believed to be the result of excessive

20  rainfall and the resulting rise of water level in nearby Silver Lake. (ECF No. 1 at 9.) The

21  damage included disruption and cracking of the asphalt and concrete around the truck

22

23

24  [2]The language in this sentence was amended to correct a clerical error. As explained below, the Court will grant Defendants' motions to dismiss in part because Plaintiff's negligence claim is barred by the economic loss doctrine. Accordingly. the

25  motions to dismiss are denied only in part.

26  [3]United requests the Court take judicial notice of certain documents, including the Certificate of Substantial Completion issued by the City of Reno. (ECF Nos. 13, 13-2, 13-

27  3.) Dermody joined the request (ECF No. 17), and Plaintiff did not oppose or otherwise respond to the request. Plaintiff did attach to the Complaint a damage evaluation letter

28  prepared for Zurich Insurance Company dated January 29. 2020, which indicates receipt of the Certificate of Occupancy on the same date. (ECF No. 1-1 at 69.)

1  dock area, structural failure of exterior stairs, and cracking within the interior and exterior

2  docking bay structure. (*Id.*)

3  Plaintiff hired Sean Wagner of NewStudio Architecture, LLC, to examine the

4  damage and investigate its cause. (*Id.* at 6.) Wagner conducted a site visit on September

5  9-12, 2019, and prepared a report dated October 4, 2019. (ECF No. 1-1 at 44-46

6  ("Wagner Report").) Wagner concluded that the damage was not in fact caused by a one-

7  time weather event, but rather was attributable to conditions that were either improperly

8  assessed or not taken into consideration in the original design and construction of the

9  Center. (ECF No. 1 at 9-10.)

10  After a claim of loss was filed, Zurich Insurance retained an outside consulting

11  firm—Madsen, Kneppers & Associates, Inc. ("MKA")—to evaluate the roof. (ECF No. 1 at

12  8.) MKA performed two site visits in December 2019 and January 2020, and issued a

13  report dated January 29, 2020 ("MKA Report"). (ECF No. 1-1 at 67.) MKA concluded that

14  the damage to the roof was "not the result of adverse weather conditions or elevated wind

15  speeds, but rather original design and construction." (*Id.* at 69.) The MKA Report also

16  notes that "there have been ongoing issues with the roof since original construction," and

17  details invoices for repairs ranging from November 2018 to March 2019. (*Id.* at 73-74.)

18  However, Defendants assert that the Center's roof sustained damage as early as

19  2011, before any time mentioned in the Complaint. (ECF No. 10 at 16.) Sometime in

20  November 2011, before the substantial completion of construction, Defendants claim the

21  Center's roof was damaged by high wind and moisture, which caused the roof fasteners

22  to pull out of the roofing deck. (*Id.*)

23  Plaintiff filed suit on March 3, 2021, nine years after the substantial completion of

24  construction. (ECF No. 1.) Defendants now claim that Nevada's statutes of repose and

25  limitations bar Plaintiff from pursuing its breach of contract claims. (ECF Nos. 10, 12.)

26  Plaintiff opposes Defendants' Motions, and seeks to file an amended complaint that adds

27  claims and parties to this action. (ECF Nos. 20, 22, 34.)

28  ///

3

1    Shortly after the parties filed their motions to dismiss and amend, the Nevada

2   Supreme Court issued two decisions that address Nevada's statute of repose. Plaintiff

3   subsequently filed a motion for leave to file supplemental briefing after each decision was

4   issued. (ECF Nos. 49, 58.) Defendants opposed both of Plaintiff's motions and included

5   in their briefing arguments not only against granting supplemental briefing, but directly

6   addressing the applicability of the *Somersett* and *Dekker* decisions to this action. (ECF

7   Nos. 50, 52, 59.) The Nevada Supreme Court summarily denied a petition for rehearing

8   in *Dekker* on October 28, 2021.[4]

9   **III.    LEAVE TO FILE SUPPLEMENTAL BRIEFING**

10    Plaintiff filed two motions for leave to file supplemental briefing. In the First Motion,

11   Plaintiff argued that the Nevada Supreme Court recently indicated in *Somersett Owners*

12   *Ass'n v. Somersett Dev. Co., Ltd.*, 492 P.3d 534 (Nev. 2021), that a qualifying fraud claim

13   may justify equitable tolling of the statute of repose, and therefore requested leave to file

14   supplemental briefing in support of its motion for leave to amend the complaint. (ECF No.

15   49.) In the Second Motion, Plaintiff argued that the Nevada Supreme Court in

16   *Dekker/Perich/Sabatini Ltd. v. Eighth Judicial Dist. Ct. in and for Cnty. of Clark*, 495 P.3d

17   519 (Nev. 2021), conclusively found that the 2019 amendments to NRS § 11.202 revives

18   claims which otherwise would have expired under the 2015 version of the statute, and

19   therefore requested leave to file supplemental briefing in support of its opposition to

20   Defendants' motions to dismiss. (ECF No. 58.) "A party may not file supplemental

21   pleadings, briefs, authorities, or evidence without leave of court granted for good cause."

22   LR 7-2(g). "Good cause may exist either when the proffered supplemental authority

23   controls the outcome of the litigation, or when the proffered supplemental authority is

24   precedential, or particularly persuasive or helpful." *Alps Prop. & Casualty Ins. C. v. Kalicki*

25

26    [4]The Court takes judicial notice of the post-judgment proceedings in *Dekker*,
   available on the Nevada Supreme Court's website. *See Dekker/Perich/Sabatini Ltd. v.*
27   *Eighth Judicial Dist. Ct. in and for Cnty. of Clark*, Case No. 81459, Document No. 21-
   31152    (Oct.    28,    2021),    available    at
28   http://caseinfo.nvsupremecourt.us/public/caseView.do;jsessionid=488CFBCF07B397C8
   8EBEE9CA0AE113E2?csIID=59373.

1    *Collier, LLP*, 526 F. Supp. 3d 805, WL 812 (D. Nev. 2021). As further explained below,

2    the Court finds good cause only as to the Second Motion.

3         **A.    First Motion (*Somersett*)**

4         The Court finds good cause does not exist to grant the First Motion. While the

5    Nevada Supreme Court did recently decide a case that involves Nevada's statute of

6    repose for construction defect actions, *Somersett Owners Ass'n v. Somersett Dev. Co.,*

7    *Ltd.*, 492 P.3d 534 (Nev. 2021), that case did not introduce a new development in Nevada

8    law. The Nevada Supreme Court acknowledged in *Somersett* that whether the statute of

9    repose could be equitably tolled when a plaintiff alleges fraud was an open question of

10   law. *Id.* at 539-40. However, the Court refrained from directly answering that open

11   question. *Id.* at 540 ("We therefore leave the question of the existence and scope of any

12   such exceptions open for when that question is actually at issue.").

13        Plaintiff argues that the dicta in *Somersett* suggests a qualifying claim for fraud

14   might justify equitable tolling of the statute of repose. (ECF No. 49 at 3.) In fact, though

15   the Nevada Supreme Court refrained from ruling on the issue as it was not properly

16   alleged, the court's reasoning indicated that equitable tolling arguments, even for fraud,

17   are disfavored because the statute of repose mechanism differs from that of the statute

18   of limitations. *See id.* at 539. Accordingly, this Court finds that *Somersett* expressly

19   declines to address whether a fraud claim would justify equitable tolling of the statute of

20   repose, and that therefore supplemental briefing based on its issuance would be neither

21   helpful nor persuasive.

22        **B.    Second Motion (*Dekker*)**

23        In the Second Motion, Plaintiff argues that the Nevada Supreme Court also

24   recently addressed whether the amended ten-year statute of repose could revive claims

25   that otherwise would have been extinguished under the former six-year statute of repose.

26   *See Dekker/Perich/Sabatini Ltd. v. Eighth Judicial Dist. Ct. in and for Cnty. of Clark*, 495

27   P.3d 519 (Nev. 2021). Plaintiff asserts that the holding in *Dekker* is both conclusive and

28   dispositive, and that the Court should refer to that authority and deny Defendants' motions

to dismiss. (ECF No. 58 at 3-4.) In the alternative, Plaintiff requests that the Court permit supplemental briefing on whether *Dekker* affects the applicable length of the statute of repose. (*Id.* at 3.)

Defendants oppose Plaintiff's Second Motion, arguing: (1) *Dekker* did not address due process rights protected by the Fourteenth Amendment, limiting its analysis to the Nevada State Constitution (ECF No. 59 at 2); (2) the Nevada Supreme Court "ignored the distinction between retroactively applying an *extension* of a statute of repose versus revival of a non-existent claim (*id.* at 3), and (3) irrespective of *Dekker*, Defendants' motions to dismiss should be granted because Plaintiff's claims are also time-barred under the applicable statute of limitations (*id.* at 4).

Notably, neither party believes that further briefing is required, and both parties have addressed *Dekker*'s applicability in their briefs. Because *Dekker* addresses a question previously unanswered by Nevada law and relevant to Defendants' motions to dismiss, the Court finds that good cause exists to grant Plaintiff's Second Motion. Accordingly, the Court will consider the parties' arguments as to *Dekker*'s applicability as raised in connection with Plaintiff's Second Motion.

## IV.    MOTIONS TO DISMISS

Defendants' motions to dismiss make three arguments: (1) Plaintiff's claims are time-barred by Nevada's statute of repose, (2) Plaintiff's claims are barred by the statute of limitations, and (3) Plaintiff's negligence claims are barred by the economic loss doctrine. (ECF Nos. 10, 12.) The Court will address each of Defendants' arguments in turn.

### A.    Statute of Repose

Defendants first argue that Plaintiff's claims have been extinguished by the statute of repose. (ECF No. 10 at 9-10.) In its present iteration, Nevada's statute of repose prohibits the commencement of a construction defect action "more than 10 years after the substantial completion" of the project. NRS § 11.202(1). But prior to the statute's amendment in 2019, the applicable repose period was six years, not ten. *See* NRS §

11.202(1) (2016). The parties do not dispute that the Center was substantially completed on January 31, 2012. If the previous version of the statute of repose applies, Plaintiff's claims would have been extinguished on January 31, 2018. But if the present statute of repose applies, Plaintiff's claims would survive until January 31, 2022, and would not be time-barred.

As explained above, while Defendants' Motions were pending, the Nevada Supreme Court issued an opinion which addressed whether the extended statute of repose period applied retroactively. *See Dekker/Perich/Sabatini Ltd. v. Eighth Judicial Dist. Ct. in and for Cnty. of Clark*, 495 P.3d 519 (Nev. 2021). The Nevada Supreme Court found that it did:

> As amended in 2019, NRS 11.202's extended ten-year repose period retroactively applies to [plaintiff's] claims against [defendant]. The Legislature lengthened the statute of repose because the shorter repose period prejudiced Nevada residents, and the Legislature clearly intended the amendment to apply retroactively. Furthermore, as amended, the plain language of NRS 11.202 allows a claim to be brought so long as it was filed within ten years after the date of substantial completion of the construction work, regardless of whether the claim would have been barred under the previous six-year statute of repose at the time the complaint was filed.

*Id.* at 525.

Defendants insist that the holding in *Dekker* does not control the outcome of this action. (ECF Nos. 59, 60.) First, Defendants argue that the Nevada Supreme Court only considered due process rights under the Nevada Constitution, but did not decide whether retroactive application violated federal substantive due process rights arising from the Fourteenth Amendment. Second, Defendants argue that even if the Nevada Supreme Court did decide *Dekker* under both the Nevada and U.S. Constitutions, the holding in *Dekker* conflicts with federal law because reviving an otherwise extinguished claim violates the Fourteenth Amendment of the United States Constitution. (ECF Nos. 59 at 2, 60 at 2.) Finally, Defendants argue that another case, *Salloum v. Boyd Gaming Corporation*, 495 P.3d 513 (Nev. 2021), contradicts the reasoning in *Dekker* and supports Defendants' Motions, permitting this Court to find that the Nevada Supreme Court's

1  interpretation of NRS § 11.202 is in doubt. (ECF No. 60 at 2.) The Court first examines

2  what aspects of *Dekker* control its reasoning, then addresses each objection in turn.

3  **1.   The *Erie* Doctrine**

4  Typically, federal courts sitting in diversity "follow state substantive law and federal

5  procedural law when adjudicating state law claims." *Sonner v. Premier Nutrition Corp.*,

6  971 F.3d 834, 839 (9th Cir. 2020) (citing *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)).

7  When deciding whether a law is substantive or procedural, courts use an "outcome-

8  determination" test—in other words, "does it significantly affect the result of a litigation for

9  a federal court to disregard a law of a State that would be controlling in an action upon

10  the same claim by the same parties in a State court?" *Guaranty Trust Co. v. York*, 326

11  U.S. 99, 109 (1945).

12  Outcome, however, is not the only consideration. *See Byrd v. Blue Ridge Rural*

13  *Elec. Co-op., Inc.*, 356 U.S. 525, 537 (1958). Courts should not "mechanically" apply the

14  outcome-determination test, but instead should consider it when doing so would promote

15  "the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of

16  inequitable administration of the laws." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S.

17  415, 428 (1996) (quoting *Hanna*, 380 U.S. at 468). Because the federal courts comprise

18  "an independent system for administering justice to litigants who properly invoke its

19  jurisdiction," there are times when "affirmative countervailing concerns" require a federal

20  court to give effect to "essential characteristics" of the federal system. *Byrd*, 356 U.S. at

21  537; *see also Snead v. Metropolitan Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1091 (9th Cir.

22  2001) (recognizing that in some circumstances, "overriding federal interests require an

23  application of federal law" when state law would otherwise apply). Conversely, when state

24  procedural rules "are 'intimately bound up with the state's substantive decision making'

25  or 'serve substantive state policies,'" federal courts sitting in diversity must give even a

26  procedural state rule "full effect." *In re Cnty. of Orange*, 784 F.3d 520, 530 (9th Cir. 2015)

27  (quoting *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 667 (9th Cir. 2003)). Courts are

28

8

1  required to "consider the policies underpinning the applicable state and federal laws" to

2  properly balance the interests of both systems. *Sonner*, 971 F.3d at 940.

3        The parties do not dispute that Nevada's statute of repose is a substantive state

4  law. It is further undisputed that "[t]he Nevada Supreme Court is controlling authority on

5  questions of Nevada law." *Nev. Power Co. v. Monsanto Co.*, 955 F.2d 1304, 1306 (9th

6  Cir. 1992); *see also U.S. Bank, N.A. Tr. for Banc of Am. Funding Corp. Mortg. Pass-*

7  *Through Certificates, Series 2005-F v. White Horse Estates Homeowners Ass'n*, 987 F.3d

8  858, 863 (9th Cir. 2021) ("In a diversity case, the published decisions of the Nevada

9  Supreme Court bind federal courts as to the substance of Nevada law."). Moreover, the

10  Nevada Supreme Court directly held that NRS § 11.202(1) permits a construction defect

11  action to be initiated within ten years of the date of substantial completion, irrespective of

12  whether the claim would have been barred under the previous six-year repose period.

13  *Dekker*, 495 P.3d at 525. Accordingly, traditional *Erie* considerations mandate that we

14  apply NRS § 11.202(1) as the Nevada Supreme Court would have had this action

15  proceeded in state court, which would permit Plaintiff's claims. *See Guaranty Trust*, 326

16  U.S. at 109.

17        Defendants argue, however, that applying the holding in *Dekker* would violate their

18  substantive due process rights under the Fourteenth Amendment. (ECF Nos. 59 at 4.)

19  Accordingly, the Court must first determine whether the Nevada Supreme Court decided

20  *Dekker* on federal as well as state grounds. If so, the Court must consider whether federal

21  law conflicts with the holding in *Dekker*. If it does, the Court must decide if disregarding

22  the Nevada Supreme Court's clear holding in *Dekker* is warranted, despite that doing so

23  would create disparate outcomes for cases proceeding in state and federal court.

24                    **2.    Scope of the *Dekker* Decision**

25        As a preliminary matter, the Court finds the Nevada Supreme Court did not limit its

26  holding in *Dekker* to claims brought under the Nevada State Constitution, despite

27  Defendants' assertions. (ECF No. 59 at 2, 60 at 1.) The court clearly contemplated both

28  federal and state constitutional protections and precedent in finding that its holding did

9

1   not pose a due process problem. *See Dekker*, 495 P.3d at 524 ("Nevada's Due Process

2   Clause mirrors its federal counterpart, *see* U.S. Const. amends. V and XIV, § 1; Nev.

3   Const. art. 1, § 8(2), and Dekker thus urges us to look to federal law in resolving its

4   argument."). The court cited not only to Nevada law, but also to *American Jurisprudence*

5   and authority from the Federal Circuit interpreting the Fifth Amendment's Due Process

6   Clause. *See id.* at 525 (citing *Schaeffler Grp. USA, Inc. v. United States*, 786 F.3d 1354,

7   1362 (Fed. Cir. 2015) and 16B Am. Jur. 2d *Constitutional Law* § 964). Accordingly, the

8   Court finds that the Nevada Supreme Court did not intend to limit its holding to matters

9   arising under the Nevada State Constitution and must consider whether its holding

10  conflicts with federal law.

11               **3.     Conflict with Federal Due Process Law**

12          Defendants argue that the Court should not apply the holding in *Dekker* to this

13  case because it is contrary to federal law. (ECF No. 59 at 3.) Arguing that federal law

14  prohibits retroactive revival of previously exhausted claims, Defendants aver the United

15  States Supreme Court has held such an action violates their substantive due process

16  rights.[5] (ECF No. 60 at 2.) In *Dekker*, the Nevada Supreme Court did not decide whether

17  NRS § 11.202 created a vested property right, but reasoned instead that even if it had,

18  the amendment's retroactive application was rationally related to a legitimate legislative

19  purpose. *See* 495 P.3d at 524. The Court finds the same is true under a federal

20  substantive due process analysis, and therefore no conflict justifies disregarding *Dekker*.

21          There are two steps to a federal substantive due process claim. First, the claimant

22  must show that they were "deprived of a 'constitutionally protected life, liberty, or property

23  interest.'" *Hotop v. City of San Jose*, 982 F.3d 710, 718 (9th Cir. 2020) (citation omitted).

24  Second, the claimant must demonstrate the legislature acted impermissibly by infringing

25  on that right. If the right is "fundamental," then "substantive due process provides

26  'heightened protection against government interference.'" *Krainski v. Nev. ex rel. Bd. of*

27

28          [5]Defendants do not make a takings argument, only a substantive due process
        argument.

10

1   *Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 969 (9th Cir. 2010) (quoting

2   *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)); *see also Albright v. Oliver*, 510

3   U.S. 266, 272 (1994) ("The protections of substantive due process have for the most part

4   been accorded to matters relating to marriage, family, procreation, and the right to bodily

5   integrity."). But "state actions that implicate anything less than a fundamental right require

6   only that the government demonstrate 'a *reasonable relation* to a legitimate state interest

7   to justify the action.'" *Fields v. Legacy Health Sys.*, 413 F.3d 943, 956 (9th Cir. 2005)

8   (emphasis in original) (quoting *Doe v. Tandeske*, 361 F.3d 594, 597 (9th Cir. 2004)); *see*

9   *also Gadda v. State Bar of Cal.*, 511 F.3d 933, 938 (9th Cir. 2007) ("Retrospective

10  economic legislation need only survive rational basis review in order to pass constitutional

11  muster."); *Jackson Water Works, Inc. v. Pub. Util. Comm'n of Cal.*, 793 F.2d 1090, 1093-

12  94 (9th Cir. 1986) ("The proper test for judging the constitutionality of statutes regulating

13  economic activity . . . is whether the legislation bears a rational relationship to a legitimate

14  state interest.").

15      Defendants argue that because they had a vested property interest in not facing

16  suit once the six-year repose period expired, any legislative action which infringed on that

17  property right violates their substantive due process rights. As explained below, this is not

18  the case.

19                          **a.    Constitutionally Protected Right**

20      Defendants characterize their right in immunity from suit as a fundamental right.

21  (ECF No. 10 at 12.) Apart from several state supreme court cases which are not

22  applicable here, Defendants cite two Supreme Court cases to support this proposition.

23  *See Chase Secs. Corp. v. Donaldson*, 325 U.S. 304 (1945); *William Danzer & Co. v. Gulf*

24  *& S.I.R. Co.*, 268 U.S. 633 (1925). Both opinions are in dialogue with *Campbell v. Holt*,

25  115 U.S. 620 (1885). In *Danzer*, the Supreme Court found that an amendment extending

26  a limitations period could not be applied retroactively because to do so "would be to

27  deprive defendant of its property without due process of law in contravention of the Fifth

28  Amendment." 268 U.S. at 637. Reasoning that the limitations period was not simply a

1    limitation on the remedy, but in fact "a limitation upon liability," the Court held by

2    implication that once the limitations period had expired, the defendant had a property right

3    in not being sued. *Id.* Consequently, the amendment extending the limitations period

4    deprived the defendant of that right. *See id.*

5          The Court revisited the link between a lapsed period to bring suit and

6    constitutionally recognized property rights in *Chase Securities Corporation v. Donaldson.*

7    *See* 325 U.S. at 315-16. The Court spoke broadly in *Chase* about the relationship

8    between retroactively extended statutes of limitation and their relationship to the Due

9    Process Clause:

10          The Fourteenth Amendment does not make an act of state legislation void
            merely because it has some retrospective operation. What it does forbid is
11          taking of life, liberty or property without due process of law. Some rules of
            law probably could not be changed retroactively without hardship and
12          oppression, and this whether wise or unwise in their origin, Assuming that
            statutes of limitation like other types of legislation could be so manipulated
13          that their retrospective effects would offend the Constitution, certainly it
            cannot be said that lifting the bar of a statute of limitation so as to restore a
14          remedy lost through mere lapse of time is per se an offense against the
            Fourteenth Amendment.
15

16   *Id.* at 315-16. The Court further reasoned that the defendant in *Chase* could show no way

17   in which it would have behaved differently had "the present rule been known and the

18   change foreseen." *Id.* at 316. Instead, the defendant merely "expected to be able to

19   defend by invoking [state] public policy that lapse of time had closed the courts to the

20   case, and its legitimate hopes have been disappointed." *Id.* However, the existence of the

21   statute of limitations did not give the defendant "a constitutional right against change of

22   policy before final adjudication." *Id.* In no sense were statutes of limitation considered "a

23   'fundamental' right." *Id.* at 314. Instead, the defendant may "have the protection of the

24   policy while it exists, but the history of pleas of limitation shows them to be good only by

25   legislative grace and to be subject to a relatively large degree of legislative control." *Id.*

26          Defendants argue that *Chase* further found statutes of repose, by contrast, do

27   create fundamental rights. (ECF No. 10 at 14.) The Court disagrees. While it is clear the

28   Supreme Court found statutes of limitations do not implicate fundamental rights, it

                                                12

1   declined to address statutes of repose beyond finding *Danzer* inapplicable in that case.

2   *See Chase*, 325 U.S. at 312 n.8. But in *Chase*, the Court explained that a state legislature

3   may pass legislation that inconveniences a party, even imposing liability on a defendant

4   from which they had reason to believe they were free, but still not violate due process.

5   *See id.* at 315-16. Extensions of limitation periods are not "per se" due process violations,

6   but instead prompt courts to consider whether the defendant relied on the extinguishment

7   of liability and would have otherwise acted differently had it known it would be subject to

8   liability, or whether the extension of time to bring suit merely reflected a change in public

9   policy. *See id.*

10          Since *Chase* was decided in 1945, courts have used its reasoning to find that

11   violations of statutes of repose that affect "economic" interests require only rational-basis

12   review. In *Usery v. Turner Elkhorn Mining Company*, the Court rejected a due process

13   violation claim when Congress retroactively created liability for defendants, reasoning that

14   "legislative Acts adjusting the burdens and benefits of economic life come to the Court

15   with a presumption of constitutionality, and [ ] the burden is on one complaining of a due

16   process violation to establish that the legislature has acted in an arbitrary and irrational

17   way." 428 U.S. 1 (1976). As Plaintiff points out, the Supreme Court has repeatedly

18   reaffirmed that adjusting a party's potential financial civil liability does not implicate a

19   fundamental right that would require heightened scrutiny of the legislature's actions. *See*

20   *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 729 (1984) (finding that

21   retroactively applying penalties to employers who withdrew early from pension plans

22   focused on matters of economic policy of which Congress was due "strong deference");

23   *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 191 (1992) (finding a retroactive application

24   of a statute requiring a company to repay worker's compensation benefits preserved the

25   balance of state policy). As these cases show, with the end of the *Lochner* era, the

26   Supreme Court developed a more nuanced approach to legislative action that reorders

27   economic responsibilities between parties in the almost 100 years since *Danzer*. Because

28   the property right Defendants assert is not "fundamental," federal law only supports a

13

1    substantive due process violation if the legislature's action does not meet a rational-basis
2    review.

3                    **b.    Rational Relationship to Legitimate Government Purpose**

4          The Court finds the 2019 amendment clearly passes constitutional muster.
5    Substantive due process claims concern "the exercise of power without any reasonable
6    justification in the service of a legitimate governmental objective." *Cnty. of Sacramento v.*
7    *Lewis*, 523 U.S. 833, 846 (1998) (citing *Daniels v. Williams*, 474 U.S. 327, 331 (1986));
8    *see also Wolff v. McDonnell*, 418 U.S. 539, 558 (1974) ("The touchstone of due process
9    is protection of the individual against arbitrary action of the government."). Because the
10   Nevada Legislature heard testimony that the prior repose period was preventing property
11   owners from bringing valid construction defect claims, and that a longer repose period
12   would rebalance the equities between owners and construction professionals, the Court
13   finds the 2019 amendment was rationally related to a legitimate legislative purpose.

14         The statute of repose has twice been amended in the last ten years. Each time,
15   the Nevada Legislature endeavored to find the "right balance" when setting a repose
16   period for construction defect claims. (ECF No. 20-2.) Before passing the 2019
17   amendment, the Nevada Legislature heard testimony from law makers, local attorneys,
18   homeowners, and civil engineers, each explaining why a ten-year repose period is
19   required to give force to the protections of Nevada's construction defect laws. (ECF No.
20   20-1.) Edred Marsh, an engineer, testified that in most states he practices there is a ten-
21   year statute of response because "soil problems take a long time to manifest," explaining
22   that the seven-year drought in Nevada is a good example of why a six-year repose period
23   is too short. (*Id.* at 12.) Eva Segerblom, a local attorney, noted that in the year prior to the
24   proposed amendment only 20 construction defect lawsuits were filed in the entire state
25   "because changes in the law have made it impossible for homeowners to have a remedy."
26   (ECF No. 20-1 at 10.) Kelly Cruz, a homeowner, testified that after her home experienced
27   substantial damage due to construction defect, she was barred from seeking relief by the
28   six-year repose period, though the damage had only recently occurred. (*Id.* at 11.)

1    The Nevada Legislature considered this testimony and referred to it expressly
2    before voting. (ECF No. 20-2 at 11.) But the Legislature also heard from the Nevada
3    Home Builders Association and considered the impact it may have on the construction
4    industry. (*Id.* at 18-20.) Indeed, after noting that the national average for construction
5    defect repose period was somewhere between eight and nine years, the representative
6    from the Home Builders Association raised the retroactivity issue and the potential
7    constitutional concern. (*Id.* at 19.) Despite those objections, the Nevada Legislature
8    enacted the 2019 amendment.

9    The Court finds that the Nevada Legislature's actions were clearly rationally related
10   to a legitimate interest. Accordingly, there is no conflict between the Nevada Supreme
11   Court's finding in *Dekker* with federal law, and no "overriding federal interest[]" the Court
12   must vitiate. *See Snead*, 237 F.3d at 1091. Not only would the outcome be the same
13   under Nevada law and federal law, but the twin aims of the *Erie* doctrine—discouraging
14   forum shopping and avoiding inequitable application of the law—is clearly better served
15   by applying NRS § 11.202 uniformly between state and federal courts. *See Gasperini*,
16   518 U.S. at 428. There is therefore no reason to disregard the Nevada Supreme Court's
17   holding in *Dekker*.

18                    **4.    *Salloum* and Alleged Disparities in Nevada Law**

19   As a final matter, Defendants argue that another case decided on the same day
20   as *Dekker* supports the arguments in their Motions and contradicts the holding in *Dekker*.
21   (ECF No. 60 at 2.) *Salloum v. Boyd Gaming Corporation* holds that the "general
22   principle—that statutory enlargements of limitation periods do not operate to revive a
23   previously barred action absent clear expression of such application by the Legislature—
24   applies in Nevada." 495 P.3d 513, 517 (Nev. 2021). Not only did the Nevada Supreme
25   Court decline to rehear *Dekker* in light of *Salloum*, but this Court also finds *Salloum* does
26   not preclude the result in *Dekker* or in this case. The Nevada Supreme Court found that
27   the Legislature clearly expressed an intent to revive actions otherwise barred by an

28

1    expired repose period. To reiterate, the Nevada Supreme Court is the "controlling
2    authority" on Nevada law. *See Nev. Power Co.*, 955 F.2d at 1306.

3         The Court therefore adopts the holding in *Dekker* and finds that the statute of
4    repose does not bar Plaintiff's claims because the Complaint was filed within ten years of
5    the date of substantial completion.

6         **B.    Statute of Limitations and Rule 12(d)**

7         Defendant United attached five exhibits to its Motion to attempt to prove the statute
8    of limitations has run on Plaintiff's claims.[6] (ECF No. 10 at 20-52 (collectively, "United's
9    Exhibits").) Defendants claim that the Court may consider these exhibits without
10   converting United's Motion into a motion for summary judgment by incorporating the
11   exhibits by reference into the Complaint. (*Id.* at 7.) Plaintiff argues this is improper, and
12   that if the Court decides to consider United's Motion as a Rule 12(c) motion, it must be
13   converted to a motion for summary judgment pursuant to Rule 12(d). (ECF No. 20 at 13.)
14   Moreover, if the Court does decide to consider United's Exhibits, Plaintiff requests that
15   the Court also order a continuance for the motion so that Plaintiff may conduct discovery.
16   (*Id.*)

17        First, the Court agrees with Plaintiff that consideration of United's Exhibits would
18   mandate conversion of United's Motion into a motion for summary judgment. However,
19   as further explained below, the Court declines to consider United's Exhibits and will deny
20   United's Motion without prejudice as to its state of limitations defense.

21        **1.    Incorporation-by-Reference**

22        Defendants first argue the Court may consider the exhibits attached to United's
23   Motion because the exhibits attached to Plaintiff's Complaint "all reference and rely upon"
24   the proffered exhibits attached to United's Motion. (ECF No. 10 at 7-8.) Defendants seek
25   to incorporate-by-reference: (1) a letter from GAF dated January 24, 2013, addressed to

26   _____

27        [6]Defendant Dermody did not raise a statute of limitations defense in its separate
     Motion, but later joined United's Motion. (ECF No. 15.) Accordingly, the Court refers to
28   the statute of limitations defense initially asserted by United as collectively asserted by
     Defendants. For ease of reference, the Court will continue to refer to the disputed exhibits
     as "United's Exhibits," attached to "United's Motion."

16

D&D Roofing and Sheet Metal Inc., regarding repairs to an Everguard TPO Roof (ECF No. 10 at 21-23); (2) a letter from GAF dated May 7, 2015, addressed to Dave Ziel of Urban Outfitters, reporting that United had been working with other groups "to repair the wind damage" to the Center "which was report as early as November 2011" (*id.* at 25); (3) a letter from GAF dated June 18, 2015, also addressed to Ziel, informing Ziel that GAF was reinstating the original roof guarantee (*id.* at 27); (4) a report from Rimkus Consulting Group dated April 7, 2014, prepared for C.N.A. Construction Defect Claims, detailing damage to the roof attributed to wind and ongoing moisture content (*id.* at 29-50); and (5) an email from Michael Wood at Urban Outfitters to a Mike Clements, dated April 11, 2019, regarding roof repairs and whether roofing companies would accept their warranty (*id.* at 52). Because none of these documents were relied upon in the Complaint, the Court will not incorporate them by reference.

"Unlike rule-established judicial notice, incorporation by reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). "[A] defendant may seek to incorporate a document into the complaint 'if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.'" *Id.* (quoting *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)). *United States v. Corinthian Colleges, Inc.* 655 F.3d 954 (9th Cir. 2011). But when a document "merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint." *Id.* "Submitting documents not mentioned in the complaint to create a defense is nothing more than another way of disputing the factual allegations in the complaint, but with a perverse added benefit: unless the district court converts the defendant's motion to dismiss into a motion for summary judgment, the plaintiff receives no opportunity to respond to the defendant's new version of the facts." *Id.* at 1003.

In the Complaint, Plaintiff never even mentions any of United's Exhibits, and certainly did not "extensively" reference the documents or their contents. There is no

1  discussion of the 2011 wind damage in the Complaint, no reference to the Rimkus report,

2  and no discussion of the GAF warranty. Permitting Defendants to attach documents never

3  mentioned in the Complaint, which address intervening issues that may form a statute of

4  limitations defense but certainly do not form the basis of Plaintiff's claims, is precisely the

5  type of angling that the Ninth Circuit cautioned against in *Khoja*. *See* 899 F.3d at 1003.

6  Because it stretches credulity to consider that United's Exhibits were "extensively"

7  referenced in the Complaint, the Court finds that incorporation-by-reference would be

8  inappropriate.[7]

9  ### 2.    Rule 12(d) Conversion to Summary Judgment

10  Because United's exhibits are newly introduced and may not be considered part

11  of the original Complaint, the Court must determine whether it should consider the exhibits

12  at all. The Court begins with the presumption it should not consider the exhibits, and

13  recognizes it may only consider them if it converts United's Motion into one for summary

14  judgment. "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are

15  presented to and not excluded by the court, the motion must be treated as one for

16  summary judgment under Rule 56." Fed. R. Civ. P. 12(d). "[F]ederal courts have complete

17  discretion to determine whether or not to accept the submission of any material beyond

18  the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it,

19  thereby converting the motion, or to reject it or simply not consider it." 5C Charles Alan

20  Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366 (3d ed. April 2021

21  Update); *see also Collins v. Palczewski*, 841 F. Supp. 333, 334 (D. Nev. 1993) ("This

22  Court retains discretion to exclude the consideration of matters outside the pleadings on

23  a motion to dismiss under Fed. R. Civ. P. 12(b)(6)."). "The central question is whether

24

25  _____

[7]Even if the Court were to accept United's assertion that incorporation-by-reference is appropriate when documents are extensively referenced by third parties in a

26  complaint's *attached exhibits*—a proposition not clearly supported by the case law they cite to—Defendants' argument is nevertheless tenuous. The exhibits Plaintiff attached to

27  its Complaint also never mention the Rimkus report, do not refer to the November 2011 wind damage, and only refer to the GAF warranty in passing. Plaintiff focuses its

28  allegations and proffered exhibits on the construction of the Center and the investigation of damage in 2019 forward.

the proffered materials and additional procedures required by Rule 56 will facilitate the disposition of the action or whether the court can base its decision upon the face of the pleadings." *Collins*, 841 F. Supp. at 335.

The Court agrees with Plaintiff that United's Exhibits do not definitely determine Plaintiff's claims are time-barred. Setting aside for the moment that Defendants appear to argue that Plaintiff should have been aware of the alleged breach before construction was completed (ECF No. 10 at 8), none of the documents attached to United's Motion definitively show that Plaintiff was aware that Defendants had breached their construction agreement at an earlier time than October 2019, as Plaintiff asserts in the Complaint. The Court agrees with Plaintiff that, if it were to consider United's Exhibits, Rule 56(d) relief would be warranted so that both parties could conduct additional discovery. Because considering the additional exhibits would not quickly "facilitate the disposition of the action," the Court declines to consider United's exhibits.

### 3.    United's Limitations Defense

Defendants argue that Plaintiff's claims accrued in November 2011, when Plaintiff was put on notice that the roof membrane was damaged by wind and moisture. (ECF No. 25 at 11.) By contrast, Plaintiff argues that its contract claims accrued in 2019, when Wagner reported that the roof was likely defectively designed or built. (ECF No. 1 at 9.) Because allegations in the Complaint are taken as true when considering a Rule 12(b)(6) motion to dismiss, the Court finds that Defendants have failed to meet their burden and will deny United's Motion on its statute of limitations defense.

"A federal court sitting in diversity applies the substantive law of the state, including the state's statute of limitations." *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir. 2011). Nevada law imposes a six-year statute of limitations for contract actions. *See* NRS 11.190(1)(b). Limitations periods are computed "from the day the cause of action accrued." *Clark v. Robison*, 944 P.2d 788, 789 (Nev. 1997). "A cause of action 'accrues' when a suit may be maintained thereon." *Id.* Nevada applies the discovery rule to contract actions, holding "an action for breach of contract accrues as soon as the

1    plaintiff *knows or should know* of facts constituting a breach." *Bemis v. Estate of Bemis*,

2    967 P.2d 437, 440 (Nev. 1998) (emphasis in original). "Dismissal on statute of limitations

3    grounds is only appropriate 'when uncontroverted evidence irrefutably demonstrates

4    plaintiff discovered or should have discovered' the facts giving rise to the cause of action."

5    *Id.* at 441.

6         Defendants have not provided "uncontroverted evidence" that Plaintiff knew or

7    should have known of a breach of the contract before receipt of the Wagner Report.

8    Taking the allegations in the Complaint as true, Plaintiff asserts that prior to October 2019,

9    it believed that damage to the roof was not in fact caused by construction defect, but

10   rather by high wind and unprecedented rainfall. (ECF No. 1 at 6-7.) Plaintiff alleges it was

11   only after receiving the Wagner Report that it learned the installation was inadequate

12   under the terms of the contract. (*Id.* at 7.) Assuming Plaintiff discovered that Defendants

13   had breached their agreement in October 2019, as it claims, its contract claims are timely.

14        Even if the Court were to reject Plaintiff's assertion, which would be improper on a

15   motion to dismiss, Defendants' arguments to the contrary are unpersuasive. Defendants

16   argue that Plaintiff's claims accrued in November 2011 when Plaintiff was "on notice" of

17   the damage to the roof. (ECF No. 10 at 16.) First, the Court is disinclined to believe that

18   Plaintiff should have known Defendants were in breach in November 2011, before the

19   City had issued a certificate of substantial completion and before Plaintiff had even taken

20   occupancy of the Center. But more importantly, the representations of both parties

21   suggest that not only did Plaintiff believe the damage was attributable to extreme weather

22   events, but third parties did as well. Defendants argue only that Plaintiff knew the roof

23   had been damaged, but fail to articulate that Plaintiff was or should have been on notice

24   that Defendants had potentially breached their agreement.

25        Because Defendants have failed to irrefutably show that Plaintiff was on notice that

26   Defendants may have breached their agreement, the Court will deny United's Motion

27   without prejudice as to the statute of limitations argument.

28   ///

1

2    **C.    Economic-Loss Doctrine**

3         Defendants also argue that Plaintiff's negligence claim is barred by the economic

4    loss doctrine. (ECF Nos. 10 at 17, 12 at 13-15.) Specifically, Defendants rely on *Halcrow,*

5    *Inc. v. Eighth Judicial District Court*, 302 P.3d 1148 (Nev. 2013), arguing the Nevada

6    Supreme Court has found negligence claims are barred in breach of contract actions

7    involving construction defects. (ECF Nos. 10 at 17, 12 at 13-14.) Plaintiff counters that

8    *Halcrow* and its predecessor, *Terracon Consultants Western, Inc. v. Mandalay Resort*

9    *Group*, 206 P.3d 81 (Nev. 2009), are limited to actions against design professionals,

10   which Defendants are not. (ECF Nos. 20 at 22, 22 at 16.) Plaintiff further argues that it

11   clearly pleaded that Defendants violated their ordinary duty of care to avoid reasonably

12   foreseeable damage to the Center. (ECF No. 22 at 17.)

13        Whether *Halcrow* and *Terracon* apply to contractors is immaterial to the outcome

14   of the negligence claim pleaded in the Complaint.[8] As pleaded, Plaintiff's negligence claim

15   ─────────────────────

16        [8]But contrary to Defendants' assertions, the Nevada Supreme Court did not clarify
     whether its holdings in *Halcrow* and *Terracon* apply to contractors. Both Halcrow and
     Terracon were actions against "design professionals." *See Halcrow*, 302 P.3d at 1150
17   (involving a negligent misrepresentation claim against a structural steel engineer);
     *Terracon*, 206 P.3d at 89 (involving a professional negligence claim against engineers
18   and architects"); *see also* NRS § 40.623 (defining "design professional" as licensed
     architects, interior designers, landscape architects, and engineers, but excluding
19   contractors). Even though the parties in *Terracon* had asked the Nevada Supreme Court
     to resolve "whether the economic loss doctrine precluded tort claims brought against
20   contractors who solely provide services," the Court reframed the question and expressly
     declined to address whether its analysis would apply equally to contractors. *See* 206 P.3d
21   at 85.
          Pertinently, the *Halcrow* Court noted that *Terracon* "left open the door for
22   exceptions to the economic loss doctrine for negligent misrepresentations claims 'in [a]
     certain categor[y] of cases when strong countervailing considerations weigh in favor of
23   imposing liability.'" *Halcrow*, 302 P.3d at 1153 (quoting *Terracon*, 206 P.3d at 86). The
     Court in *Halcrow* then largely closed that door, finding the economic loss doctrine barred
24   negligent misrepresentation claims "in the context of commercial construction design
     professionals." *Id.* Other judges in this district have declined to strictly limit *Halcrow* to
25   "design professionals." *See, e.g., Nev. Power Co. v. Trench France, S.A.S.*, 2020 WL
     6689340, at *6 (D. Nev. Nov. 12, 2020) (finding a negligent misrepresentation claim
26   barred by the economic loss doctrine because the defendant "provide[d] no justification
     for why a bushings manufacturer should be treated differently than the design
27   professionals in *Halcrow*"). Only when a plaintiff can articulate "'strong countervailing
     considerations [that] weigh in favor of imposing liability' . . . where there is a significant
28   risk that 'the law would not exert significant financial pressures to avoid such negligence'"
     will a court permit negligent misrepresentation claims in cases that assert purely
     economic losses. *Halcrow*, 302 P.3d at 1153 (quoting *Terracon*, 206 P.3d at 86, 88).

1   is barred by the economic loss doctrine. "Under the economic loss doctrine 'there can be

2   no recovery in tort for purely economic losses.'" *Calloway v. City of Reno*, 993 P.2d 1259,

3   1263 (Nev. 2000) (internal citation omitted), *overruled on other grounds by Olson v.*

4   *Richard*, 89 P.3d 31 (2004). "[E]conomic losses are not recoverable in negligence absent

5   personal injury or damage to property other than the defective entity itself." *Id.* at 1267.

6          Plaintiff asserts what amounts to a professional negligence claim against parties

7   with whom it is in privity of contract, without claiming injury to any property beyond the

8   allegedly defectively constructed Center. Plaintiff alleges only that Defendants "failed and

9   neglected to perform the work, labor and services properly or adequately" and "knew or

10  should have foreseen with reasonable certainty that [Plaintiff] would suffer monetary

11  damages." (ECF No. 1 at 14.) These facts are very similar to those in *Calloway*, where

12  townhouse owners brought claims in tort against contractors and subcontractors after the

13  townhouses built with defective roofs sustained damage due to excessive rain and snow.

14  *See* 993 P.2d at 1261-62. There, the Nevada Supreme Court found that because the

15  owners failed to allege damage to property "other than the defective entity itself," their tort

16  claims were barred by the economic loss doctrine. *Id.* at 1267. Plaintiff's negligence claim

17  is therefore squarely barred per the holding in *Calloway*. Accordingly, the Court will

18  dismiss Plaintiff's negligence claim.

19         In sum, the Court dismisses Plaintiff's negligence claim because it is barred by the

20  economic loss doctrine.  The Court finds the statute of repose of ten years does not bar

21  Plaintiff's claims.  The Court rejects Defendants' arguments that the statute of limitations

22  has lapsed as raised in the Motions. denies Defendants' motion to dismiss.

23  **V.    LEAVE TO AMEND**

24         Plaintiff first requested leave to amend its Complaint as part of its opposition to

25  Defendants Motions. (ECF Nos. 20, 22.) However, Plaintiff later filed a standalone motion

26  for leave to amend so that it can assert additional claims for intentional concealment and

27  misrepresentation. (ECF No. 34 at 4.) Plaintiff's proposed first amended complaint (ECF

28  No. 34-3 ("PFAC")) adds GAF Materials Corporation as a defendant and adds new claims

1   for violation of Nevada's deceptive trade practices act, violation of Nevada's consumer
2   fraud statute, civil conspiracy, and civil aiding and abetting.[9] Defendants' sole argument
3   opposing Plaintiff's motion for leave to amend the Complaint is that the PFAC would not
4   cure the alleged statute of limitations and statute of repose defects. As discussed above,
5   the statute of repose does not bar Plaintiff's claims and Defendants have not
6   demonstrated that the statute of limitations does either.

7          "The court should freely give leave [to amend] when justice so requires." Fed. R.
8   Civ. P. 15(a)(2). "The decision of whether to grant leave to amend nevertheless remains
9   within the discretion of the district court, which may deny leave to amend due to 'undue
10  delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure
11  deficiencies by amendments previously allowed, undue prejudice to the opposing party
12  by virtue of allowance of the amendment, [and] futility of the amendment.'" *Leadsinger,*
13  *Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (quoting *Foman v. Davis*,
14  371 371 U.S. 178, 182 (1962)). Because Defendants argue only—unpersuasively—that
15  amendment would be futile because Plaintiff's claims are time-barred, Plaintiff's motion
16  for leave to amend is granted.

17  **VI.   CONCLUSION**

18         The Court notes that the parties made several arguments and cited to several
19  cases not discussed above. The Court has reviewed these arguments and cases and
20  determines that they do not warrant discussion as they do not affect the outcome of the
21  motions before the Court.

22         It is therefore ordered that Plaintiff's motion for leave to file supplemental briefing
23  in support of its motion for leave to amend its complaint (ECF No. 49) is denied.

24         It is further ordered that Plaintiff's motion for leave to file supplemental briefing in
25  support of its opposition to Defendants' motions to dismiss (ECF No. 58) is granted as
26  specified herein.

27  ///

28  _____
           [9]Plaintiff also includes a request for punitive damages. (ECF No. 34-3 at 30.)

1    It is further ordered that Defendant United's motion to dismiss (ECF No. 10) is

2  granted in part and denied in part, as specified herein.

3    It is further ordered that Defendant Dermody's motion to dismiss (ECF No. 12) is

4  granted in part and denied in part, as specified herein.

5    It is further ordered that Plaintiff's motion for leave to amend its complaint (ECF

6  No. 34) is granted.

7    DATED THIS 16th Day of November 2021.

8

9

10  _____
    MIRANDA M. DU
11  CHIEF UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24