1
2
3                        UNITED STATES DISTRICT COURT
4                             DISTRICT OF NEVADA
5                                    * * *
6    URBAN OUTFITTERS, INC.,                    Case No. 3:21-cv-00109-MMD-CLB
7                            Plaintiff,                        ORDER
          v.
8
     DERMODY OPERATING COMPANY,
9    LLC, *et al.*,
10                         Defendants.
11

12   **I.    SUMMARY**

13          This is a breach of contract action involving the construction of a fulfillment and

14   distribution center. In its amended complaint (ECF No. 65 ("FAC")), Plaintiff Urban

15   Outfitters, Inc. ("Urban") brings claims against Defendants Dermody Operating Company,

16   LLC ("Dermody"), the project developer, United Construction Corporation ("United"), the

17   general contractor, and GAF Materials Corporation ("GAF"), the manufacturer of roofing

18   materials for the project. As pertinent here, the FAC asserts four claims against GAF:

19   consumer fraud; deceptive trade practices; civil conspiracy; and civil aiding and abetting.

20   (*Id.* at 18-27.) Before the Court is GAF's motion to dismiss (ECF No. 89 ("Motion")) these

21   claims.[1] Because Urban has failed to plead facially plausible claims, and as further

22   explained below, the Court will grant the Motion but will grant Urban leave to amend its

23   claims.

24   **II.   BACKGROUND**

25          The Court adapts the following allegations from the FAC. Urban contracted with

26   Defendants Dermody and United on May 11, 2011, for the construction of a warehouse,

27

28   _____

               [1]Urban filed a response (ECF No. 96), and GAF filed a reply (ECF No. 97).

distribution, and fulfillment center (the "Center") in Reno, Nevada. (ECF No. 65 at 3.) Urban agreed to pay Dermody and United $25,540,253.00 for the Center, which would encompass approximately 462,720 square feet, as well as associated driveways, parking areas, on-site utilities, and landscaped areas. (*Id.*) Dermody and United agreed to be responsible for all errors and omissions committed by Dermody or United, along with any architects, subcontractors, and their agents and employees. (*Id.* at 4.) Defendant GAF manufactured the materials used in the design and installation of the Center's roof and provided a 10-year guarantee to Urban for the materials and workmanship related to installation. (*Id.* at 24-25.) The construction was substantially completed on January 31, 2012, and Urban took occupancy on February 2, 2012. (ECF Nos. 13-2, 13-3.)

Urban alleges that sometime around October 2019, the Center's roof sustained significant damage, which Urban initially believed to be the result of excessive rainfall. (ECF No. 65 at 8.) The damage included weakened roof decking, punctures in the roof membrane due to loosened fasteners, and water damage through the punctures, cracks, and joints. (*Id.*) Urban hired Sean Wagner of NewStudio Architecture, LLC, to examine the damage and investigate its cause. (*Id.*) Wagner conducted a site visit on September 9-12, 2019, and prepared a report dated October 4, 2019. (ECF No. 1-1 at 44-46.) Wagner concluded that the damage was not in fact caused by a one-time weather event but was rather attributable to conditions "not taken into consideration in the original design and construction" of the Center. (ECF No. 65 at 8-9.)

Urban further alleges that the October 2019 roof damage stems from defects in the Center's original roof construction in 2011. (ECF No. 65 at 21-22.) In 2011, while the building was still under construction, the roof first suffered wind damage due to United's defective installation of skylights. (*Id.* at 7.) After it finished construction, United began performing repairs on the Center's roof. (*Id.*) United consulted with GAF, the manufacturer of the roofing materials, to formulate a repair plan for the wind damage. (*Id.* at 21, 25.) GAF assessed the original roof design and then shared its findings with United's roofing subcontractor in a letter dated January 24, 2013. (*Id.*) In the letter, GAF acknowledges

2

1    that the roof "did not meet contractual requirements," due to issues like incorrect roof

2    decking used with GAF's roof assemblies as well as an insufficient moisture barrier. (*Id.*

3    at 21-22.) The Center's defective roof installation would have required "complete removal

4    and replacement of the nearly completed roof at significant cost to both GAF and [United]"

5    and "would void the GAF guarantee." (*Id.* at 25.) Urban alleges, however, that GAF failed

6    to disclose this fact to Urban and, as a result, Urban did not know of GAF's letter until

7    April 2021, eight years later. (*Id.* at 22.) In particular, Urban's fraud-based claims arise

8    from a June 2015 letter it received from GAF. (*Id.* at 21-22, 25-26, 27.) In this letter, GAF

9    characterized the roof as "repaired" "without disclosing their knowledge that the roof did

10   not meet contractual requirements" back in 2013. (*Id.* at 22.) Urban alleges that GAF knew

11   that its statement confirming the roof's repaired status was false. (*Id.*)

12       Urban initially filed suit against Defendants Dermody and United, alleging breach

13   of contract and related causes of action. (ECF No. 1.) Both Dermody and United moved

14   to dismiss Urban's initial complaint, arguing that Nevada's statutes of repose and

15   limitations barred Urban from pursuing its claims. (ECF No. 10.) Urban then opposed the

16   motions to dismiss and sought to file an amended complaint to add claims and parties to

17   its lawsuit. (ECF Nos. 20, 22, 34.) In November 2021, the Court denied Defendants'

18   motions to dismiss and granted Plaintiff leave to file an amended complaint. (ECF No. 63

19   at 1-2.) Urban then filed the FAC, which includes four claims against newly added GAF.

20   (ECF No. 65 at 18-27.)

21       GAF now moves to dismiss the claims asserted against it, arguing that Urban fails

22   to state its fraud-based claims with particularity under Federal Rules of Civil Procedure

23   12(b)(6) and 9(b). (ECF No. 89 at 2-3.) Urban opposes GAF's motion to dismiss and

24   argues that it has pleaded facially plausible claims. (ECF No. 96.)

25   **III.    LEGAL STANDARD**

26       A court may dismiss a plaintiff's complaint for "failure to state a claim upon which

27   relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide

28   "a short and plain statement of the claim showing that the pleader is entitled to relief."

Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pleaded factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *See id*. at 678. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *See id*. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *See id*. at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *See id*. at 678. Where the complaint does not permit the Court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* at 679 (alteration in original) (internal quotation marks and citation omitted). That is insufficient. When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *See Twombly*, 550 U.S. at 570.

## IV.   DISCUSSION

GAF generally argues that Urban fails to plead any facially plausible claims against it with the specificity required under Federal Rule of Civil Procedure 9(b). (ECF No. 89 at 8, 11, 12.) As further explained below, the Court agrees. However, the Court finds that Urban's claims may be cured by amendment. The Court addresses below GAF's Motion

1    as to each of Urban's claims against it, and then explains why it will grant Urban leave to

2    amend the claims that the Court agrees should be dismissed.

3              **A.    Consumer Fraud/Deceptive Trade Practices Claims**

4              GAF argues that dismissal of this claim is proper because Urban fails to specify

5    how GAF deceived Urban, how Urban relied on GAF's misrepresentations or omissions

6    to its detriment, or how GAF's alleged actions caused Urban's damages. (ECF No. 89 at

7    8.) Urban counters that it did "specifically" plead a misrepresentation and an omission by

8    GAF as well as its detrimental reliance resulting in damages. (ECF No. 96 at 4, 8-9.) In

9    addition, Urban argues that its consumer fraud claim is facially plausible because reliance

10   upon GAF's actions need not be pleaded with particularity under Rule 9(b). (*Id.* at 8.) The

11   Court ultimately agrees with GAF and grants its Motion as to its consumer fraud and

12   deceptive trade practices claims.

13             Rule 9(b) provides that when a party alleges fraud, the party must "state with

14   particularity the circumstances constituting fraud," that is, "the who, what, when, where,

15   and how of the misconduct charged." *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d

16   1225, 1228 (9th Cir. 2019) (citation omitted); *see also Depot, Inc. v. Caring for Montanans,*

17   *Inc.*, 915 F.3d 643, 668 (9th Cir. 2019) (noting that "the complaint must include an account

18   of the time, place, and specific content of the false representation as well as the identities

19   of the parties to the misrepresentations") (citations and quotation marks omitted). Rule

20   9(b) applies to state-law claims that "sound in fraud" and "are 'based on a unified course

21   of fraudulent conduct.'" *Motogolf.com, LLC v. Top Shelf Golf, LLC*, 528 F. Supp. 3d 1168,

22   1174 & n.3 (D. Nev. 2021) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104-

23   05 (9th Cir. 2003)). Both courts within the District of Nevada and the Nevada Supreme

24   Court have applied Rule 9(b)'s heightened pleading standard to consumer

25   fraud/deceptive trade practices claims under Nevada law.[2] *See, e.g.*, *id.* at 1174 (applying

26   _____

27             [2]While these courts apply two different sets of civil procedure rules—state and
     federal—to fraud-based claims, the courts' analyses are virtually identical. Indeed, the
28   Nevada Supreme Court has stated that NRCP 9(b) "contains language identical" to its
     federal counterpart and applies in the same ways. *Rocker v. KPMG LLP*, 148 P.3d 703,

1   Rule 9(b) to consumer fraud, civil conspiracy, and civil aiding and abetting claims because

2   they are all based on the same alleged misrepresentations and thus "sound in fraud");

3   *see also Switch, Ltd. v. Uptime Inst., LLC*, 426 F. Supp. 3d 636, 642, 644 (D. Nev. 2019);

4   *Gage v. Cox Commc'ns, Inc.*, Case No. 2:16-cv-02708-KJD-GWF, 2017 WL 1536219, at

5   *2 (D. Nev. Apr. 27, 2017); *Davenport v. Homecomings Fin., LLC*, Case No. 56322, 2014

6   WL 1318964, at *3 (Nev. Mar. 31, 2014); *Davenport v. GMAC Mortg.*, Case No. 56697,

7   2013 WL 5437119, at *3 (Nev. Sept. 25, 2013); *Rocker*, 148 P.3d at 708-09.

8          The Court accordingly finds that Rule 9(b)'s heightened pleading standard applies

9   to Urban's consumer fraud/deceptive trade practices claims because they are both based

10  on the same alleged fraudulent conduct—GAF's misrepresentations about the Center's

11  roof being repaired despite knowledge of its previous construction defects. *See, e.g.*,

12  *Motogolf.com, LLC,* 528 F. Supp. 3d at 1174 & n.3 (finding that Rule 9(b)'s heightened

13  pleading standard applies to the plaintiff's underlying consumer fraud claim because it

14  "sound[s] in fraud" and is based on the same alleged fraud as the civil conspiracy and

15  civil aiding and abetting claims). As explained below, Urban fails to plead its consumer

16  fraud claims with the particularity required by Rule 9(b).

17         To start, rather than identifying the particular time, place, and circumstances of

18  GAF's alleged deceptions, Urban appears to lump GAF together with the other

19  Defendants and vaguely alleges that GAF defrauded it. (*See generally* ECF No. 65.) This

20  fails to meet the pleading standard. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th

21  Cir. 2007) (stating that "[FRCP] 9(b) does not allow a complaint to merely lump multiple

22  defendants together but 'require[s] plaintiffs to differentiate their allegations when suing

23  more than one defendant . . . and inform each defendant separately of the allegations

24  surrounding his alleged participation in the fraud'").

25         Further, Urban's claims stem from installation services, not manufacturing

26  services, under a contract to which GAF was not a party. (ECF Nos. 65 at 2, 7, 11, 96 at

27

28  708-09 (Nev. 2006) (*overturned on other grounds by Buzz Stew, LLC v. City of N. Las Vegas*, 181 P.3d 670, 672 (Nev. 2008)).

1   2.) GAF merely manufactured and guaranteed the roofing materials, which other parties—

2   namely United and its roofing subcontractor—then improperly installed to construct the

3   roof. (ECF No. 65 at 2, 7.) Urban also does not allege that GAF itself installed the roofing

4   system or designed the defective parts. (*See generally id.*) In sum, the Court agrees with

5   GAF that any alleged defects not addressed in its 2015 letter do not give rise to actionable

6   claims because GAF had no duty to Urban regarding roof instillation as a non-party

7   manufacturer. (ECF No. 97 at 2-3.)

8         More specifically, Urban asserts two claims for deceptive trade practices and

9   consumer fraud under NRS §§ 41.600(2)(e) and 598.0915 through 598.0925.[3] (ECF No.

10  65 at 18-19, 21.) NRS § 41.600(1) provides that "[a]n action may be brought by any

11  person who is a victim of consumer fraud." A deceptive trade practices claim brought

12  under NRS § 41.600(1) requires Urban to show that "(1) an act of consumer fraud by the

13  defendant (2) caused (3) damage to the plaintiff." *Picus v. Wal-Mart Stores, Inc.*, 256

14  F.R.D. 651, 658 (D. Nev. 2009); *see also* NRS § 41.600(2)(e) (defining consumer fraud

15  to include deceptive trade practices listed in NRS §§ 598.0915 to 598.0925). To establish

16  "causation," a plaintiff must allege that it relied on a material misrepresentation that

17  caused the harm. *See Guerra v. Dematic Corp.*, Case No. 3:18-cv-0376-LRH-CLB, 2020

18  WL 5995496, at *2 (D. Nev. Oct. 8, 2020) (recognizing that "the causation element [under

19  NRS § 41.600] includes reliance," meaning that "the defendant must have relied on the

20  alleged misrepresentation in order to state a claim under the [statute]").

21        Urban fails to sufficiently plead its consumer fraud and deceptive trade practices

22  claims. For example, Urban fails to sufficiently plead the first element of the claim—an

23  act of consumer fraud—with the particularity required by Rule 9(b). Urban instead alleges

24  that GAF misrepresented that the roof was fully repaired, all while failing to disclose its

25

26        [3]Although Urban asserts its consumer fraud and deceptive trade practices claims
27  as two distinct causes of action in the FAC, the Court addresses them as one combined
    issue because "[c]onsumer fraud" under NRS § 41.600(2)(e) also includes "deceptive
    trade practices" as listed in NRS §§ 598.0915 to 598.0925. Urban specifically asserts
28  violations of NRS §§ 598.0915(5), 598.0915(7), 598.0915(15), and 598.0923(2)(1)(b).
    (ECF No. 65 at 18-20.)

knowledge of the ongoing construction defects. (ECF No. 65 at 20, 22.) But Urban accordingly fails to allege that GAF engaged in a "deceptive trade practice" by knowingly misrepresenting the quality of its own roofing products, or otherwise making a false representation in connection with a transaction. *See* NRS §§ 598.0915(5), 598.0915(7), 598.0915(15); *see also Gage*, 2017 WL 1536219, at *2 (recognizing that, under Nevada law, "the entirety" of NRS § 598 "only applies to transactions involving goods and services," and noting that "Plaintiff has not plead that Defendant's phone calls involved the sale of goods or services."). As GAF notes (ECF Nos. 89 at 4, 97 at 3), Urban alleges no facts suggesting that GAF engaged in deceptive trade practices about *its own* products, design/installation, or guarantee program.

Urban also does not explain how Dermody and United's original mistakes in 2011 implicate a "sale" by or "transaction" with GAF under NRS § 598. *See Gage*, 2017 WL 1536219, at *2 (recognizing that, under Nevada law, "the entirety" of § 598 "only applies to transactions involving goods and services"). In fact, the FAC appears to suggest good-faith efforts by GAF to encourage proper repairs. (ECF No. 65 at 25.) Indeed, in its 2013 letter, GAF identified which of its own roof assemblies would "meet the wind design criteria of the Property" and informed United that it had used the wrong decking materials against GAF's own specifications. (*Id.*)

Moreover, Urban fails to plead the second element of consumer fraud—causation—with the particularity required by Rule 9(b). Specifically, it is unclear how or when Urban relied on GAF's deceptions about the roof's repaired status, and how GAF's statement caused Urban's damages. As noted, Urban instead alleges that the roof defects resulted from United's original design and installation in 2011. (ECF No. 65 at 7.) Yet Urban also alleges that GAF's failure to address United's mistakes prevented Urban from "insisting on the proper repairs, which eventually resulted in significant roof damage" in 2019. (*Id.* at 27.) But Urban provides no further details that explain when or how it relied on GAF's actions to its detriment within this four-year period. Without more details, the Court cannot reasonably infer that GAF's actions—as opposed to the actions of other

8

1   defendants—caused Urban's damages between 2015 and 2019. In sum, because Urban

2   fails to sufficiently plead either the consumer fraud or causation elements of these claims,

3   the Court grants GAF's Motion as to Urban's consumer fraud and deceptive trade

4   practices claim.

5              **B.      Civil Conspiracy/Concert of Action Claim**

6              Defendant GAF next argues that Urban's civil conspiracy claim is subject to Rule

7   9(b)'s heightened pleading standard, which Urban fails to satisfy. (ECF No. 89 at 10-11.)

8   As to this claim, GAF further argues that its actions, as alleged by Urban, "do not create

9   the basis for a tacit understanding and agreement between parties to engage in the

10  unlawful acts." (*Id.*) The Court agrees.

11             To state a valid claim for civil conspiracy, a plaintiff must show: (1) defendants, by

12  acting in concert, intended to accomplish an unlawful objective for the purpose of harming

13  the plaintiff; and (2) the plaintiff sustained damages as a result. *See Hilton Hotels Corp.*

14  *v. Butch Lewis Prods., Inc.*, 862 P.2d 1207, 1210 (Nev. 1993) (citations omitted). "While

15  the essence of the crime of conspiracy is the agreement, the essence of civil conspiracy

16  is damages." *Flowers v. Carville*, 266 F. Supp. 2d 1245, 1249 (D. Nev. 2003) (citation

17  omitted). And "[t]he damages result from the tort underlying the conspiracy." *Id*. Indeed,

18  "[c]ivil conspiracy requires the existence of an underlying tort." *Markey v. Bank of Am.,*

19  *N.A.*, Case No. 2:12-cv-00027-LDG, 2012 WL 3317789, at *3 (D. Nev. Aug. 10, 2012)

20  (citing *Flowers*, 266 F. Supp. 2d at 1249). Civil conspiracy claims are also subject to Rule

21  9(b)'s heightened pleading standard when such claims "sound in fraud" and "are 'based

22  in a unified course of fraudulent conduct.'" *Motogolf.com, LLC*, 528 F. Supp. 3d at 1174

23  & n.3. Rule 9(b)'s heightened pleading standard accordingly applies to this claim as well.

24             Urban's failure to state an actionable claim for consumer fraud/deceptive trade

25  practices—at least at this point in time—is also fatal to its civil conspiracy claim against

26  GAF because the civil conspiracy claim lacks the requisite underlying claim. *See Markey,*

27  2012 WL 3317789, at *3 (finding as such in pertinent part). Therefore, GAF's Motion is

28  also granted as to Urban's civil conspiracy claim.

1

### C.  Civil Aiding and Abetting Claim

2      GAF finally contends that Urban's civil aiding and abetting claim is also subject to

3  Rule 9(b)'s heightened pleading standards, which Urban fails to satisfy. (ECF No. 89 at

4  12.) GAF argues that Urban merely recites the elements of a civil aiding and abetting

5  claim and fails to explain how GAF was aware of its role in promoting consumer fraud, or

6  how GAF knowingly and substantially assisted Defendants United and Dermody in its

7  fraudulent conduct. (*Id.*) Urban responds that it pleads an actionable civil aiding and

8  abetting claim because it plausibly alleges United's breach of contract and concealment

9  of defects, and that "GAF aided and abetted that concealment." (ECF No. 96 at 13-14.)

10  The Court agrees with GAF.

11      Under Nevada law, "liability attaches for civil aiding and abetting if the defendant

12  substantially assists or encourages another's conduct in breaching a duty to a third

13  person." *See Dow Chem. Co. v. Mahlum*, 970 P.2d 98, 112 (Nev. 1998), *abrogated on*

14  *other grounds by GES, Inc. v. Corbitt*, 21 P.3d 11, 15 (Nev. 2001). Therefore, Urban must

15  allege that: (1) United or Dermody breached their contractual or legal duties to Urban; (2)

16  GAF was aware of its role in assisting or encouraging the breach; and (3) GAF knowingly

17  and substantially assisted United or Dermody. *See G.K. Las Vegas Ltd. P'ship v. Simon*

18  *Prop. Grp., Inc.*, 460 F. Supp. 2d 1246, 1261 (D. Nev. 2006). Rule 9(b)'s heightened

19  pleading standard also applies to civil aiding and abetting claims when "they sound in

20  fraud" and "are 'based in a unified course of fraudulent conduct.'" *Motogolf.com, LLC*, 528

21  F. Supp. 3d at 1174 & n.3. The Court has previously found that Urban's underlying

22  consumer fraud claim "sound[s] in fraud" and is therefore subject to Rule 9(b)'s

23  heightened pleading standard—and it accordingly applies to this claim as well. *Id.*

24      Urban fails to sufficiently plead the second and third elements of its civil aiding and

25  abetting claim. *See FLS Transp. Serv. (USA) Inc. v. Casillas*, Case No. 3:17-cv-00013-

26  MMD-VPC, 2017 WL 4127980, at *10 (D. Nev. Sept. 18, 2017) (recognizing the three

27  elements of a civil aiding and abetting claim as "breach," "knowledge," and "substantial

28  assistance") (citing *G.K. Las Vegas Ltd. P'ship*, 460 F. Supp. 2d at 1261). As to the claim's

10

first element—breach—the Court can reasonably infer from the FAC that United or Dermody improperly designed and installed the Center's roof structure during construction in 2011. (ECF No. 65 at 6-7, 9-10.) However, Urban fails to satisfy the second and third elements—knowledge and substantial assistance. Specifically, it is unclear in the FAC how GAF knew of its role in assisting United or Dermody in breaching their duties to Urban, and Urban similarly fails to explain how or when GAF substantially assisted United or Dermody in *their* alleged breach. (*See generally id.*) Thus, GAF's Motion is also granted as to Urban's civil aiding and abetting claim.

## D. Leave to Amend

Where the Court grants one or more motions to dismiss, it must then decide whether to grant leave to amend. The Court has discretion to grant leave to amend and should freely do so "when justice so requires." Fed. R. Civ. P. 15(a); *see also Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). Nonetheless, the Court may deny leave to amend if it will cause: (1) undue delay; (2) undue prejudice to the opposing party; (3) the request is made in bad faith; (4) the party has repeatedly failed to cure deficiencies; or (5) the amendment would be futile. *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008). Facts raised for the first time in a plaintiff's opposition papers should be considered by the Court in determining whether to grant leave to amend or to dismiss the complaint with or without prejudice. *See Orion Tire Corp. v. Goodyear Tire & Rubber Co.*, 268 F.3d 1133, 1137-38 (9th Cir. 2001).

While Urban does not specifically seek leave to amend in its response to the Motion, Urban refers to the Nevada Supreme Court's decision in *Rocker v. KPMG LLP*, 148 P.3d 703, to argue that a relaxed pleading standard should apply to this case and request that, if the Court dismisses its claims against GAF, the Court should permit Urban to "conduct limited discovery such that an amended complaint alleging fraud with particularity may be filed." (ECF No. 96 at 14-15.) Under *Rocker*, where the facts necessary for pleading fraud with particularity "are peculiarly within the defendant's knowledge or are readily obtainable by him," a court may apply a relaxed pleading

1  standard. 148 P.3d at 708 (quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)).

2  In such a situation, a court may permit the plaintiff to conduct limited discovery such that

3  an amended complaint pleading fraud with particularity may be filed. *See id.* at 709.

4  However, before *Rocker* discovery may be permitted, the plaintiff must: (1) plead

5  sufficient facts to support a strong inference of fraud; (2) aver that a relaxed pleading

6  standard is appropriate; and (3) show in the complaint that the claim cannot be pleaded

7  with more particularity because the necessary information is in the defendant's

8  possession. *See id.*

9  Urban has not demonstrated that a relaxed pleading standard should apply to this

10 case—nor has it demonstrated it is entitled to *Rocker* relief. Because Urban fails to

11 sufficiently plead all the elements of its consumer fraud claim, Urban's allegations do not

12 support a strong inference of fraud. Further, Urban fails to explain why the information it

13 needs to comply with Rule 9(b)'s heightened pleading standard is within GAF's

14 knowledge or possession. Indeed, Urban describes in the FAC its multi-year involvement

15 in the roof repair process with Defendants Dermody and United, who would both likely

16 have direct knowledge of the roof's construction defects. (ECF No. 96 at 15 (referring to

17 ECF No. 65 at 21-22).) And because all parties—Urban, Dermody, United, and GAF—

18 were actively involved in the roof construction and repairs for the Center that Urban itself

19 occupied, Urban should have sufficient knowledge of the relevant facts necessary to

20 support its claim. Thus, *Rocker*'s relaxed pleading standard does not apply, and Urban is

21 not entitled to *Rocker* relief.[4]

22 While Urban is not entitled to *Rocker* relief, the Court nonetheless grants Urban

23 leave to amend its complaint because it cannot find that amendment would be futile. To

24 be sure, the Court has granted Urban leave to amend its complaint once before. (ECF

25

26 _____

27 [4]The FAC also does not meet the Ninth Circuit's criteria, which applies a relaxed pleading standard to "permit discovery in a limited class of corporate fraud cases where the evidence of fraud is within a defendant's exclusive possession." *U.S. ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001). Urban does not plead facts suggesting corporate fraud and does not demonstrate that any evidence of fraud is within GAF's exclusive possession.

28

No. 63 at 22-23.) However, the FAC reflects the first time Urban has brought claims against GAF, and Urban has not previously failed to cure deficiencies as to these specific claims. (ECF No. 65 at 18-27.) Therefore, leave to amend is appropriate with respect to Urban's claims against GAF. Urban must file its second amended complaint containing amended allegations against GAF within 30 days.

**V.     CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion before the Court.

It is therefore ordered that Defendant GAF Materials Corporation's motion to dismiss (ECF No. 89) is granted but the Court grants Urban leave to amend. Urban must file its second amended complaint containing amended allegations against GAF within 30 days. Failure to do so will result in dismissal of the claims against GAF with prejudice.

DATED THIS 12th Day of September 2022.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE